## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **BARBARA S. QUINN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO. H-06-00191** |
| | § | |
| **STATE FARM LLOYDS,** | § | |
| | § | |
| **Defendant.** | § | |

### <u>MEMORANDUM AND ORDER</u>

Pending before the Court is Defendant's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) and, Partially in the Alternative, Motion for Summary Judgment on Plaintiff's Causes of Action (Docket # 6). For the reasons set forth below, Defendant's motion is **GRANTED**.

## I. BACKGROUND

This case arises from Plaintiff Barbara Quinn's ("Quinn") claims for policy benefits under a homeowner's policy that was issued to her by Defendant State Farm Lloyds ("State Farm"). In June 2002, Quinn filed a claim with State Farm, after noticing that her master bathroom shower was cracked and sinking. State Farm assigned Quinn claim number 53-Q560-279, which included her claims both for plumbing leaks and for damage to her home's foundation. As part of its investigation of the damage, State Farm retained MCG Plumbing Enterprises to conduct plumbing tests at Quinn's home. State Farm also retained DJS Engineering, Inc. to determine whether the foundation damage to Quinn's home was caused by plumbing or sewer line leaks.

After completing its investigation, State Farm concluded that the damage to the foundation of Quinn's home was not related to the plumbing leaks, and therefore, that Quinn's

claim relating to foundation damage was excluded from the coverage of her homeowner's policy. In a letter dated September 17, 2002, State Farm notified Quinn that her claim for foundation damage was excluded from her policy coverage, and that State Farm would not issue any payment for foundation damage.  State Farm made payments to Quinn for damage relating to her home's plumbing leaks.

Following State Farm's letter dated September 17, 2002, Quinn and State Farm engaged in additional correspondence regarding Quinn's claim for foundation damage.  Quinn retained her own engineer, David Grissom, who conducted an analysis of Quinn's foundation and found that the foundation damage was caused by the plumbing leaks.  In May 2003, Fugro South, Inc. performed a geotechnical investigation, or soil analysis, of Quinn's home.  In various letters sent to Quinn in 2003, State Farm indicated that its engineers had reviewed these additional reports, and that State Farm had not changed either its conclusion that her foundation damage was unrelated to the plumbing leaks, or its decision not to issue any payment on her claim for the foundation damage.  In a letter to the Texas Department of Insurance dated November 26, 2003, State Farm indicated that, despite explaining its position that the plumbing leaks had not caused the foundation damage, in its letter to Quinn dated September 17, 2002, as well as its subsequent review of David Grissom's and Fugro South, Inc.'s reports, it had agreed to have a third-party engineer review all reports relating to Quinn's claim for foundation damage.  Quinn alleges that State Farm informed her of the third-party engineer's findings, and informed her that it would not issue payment on her claim for the foundation damage, in a letter dated December 11, 2003.

Quinn and State Farm also engaged in further communication in 2004, relating to Quinn's claims for plumbing and water damage.  In a letter dated March 10, 2004, for example, State Farm indicated that its "inspection revealed water damage resulting from [Quinn's] shower

pan leak to [her] master bath, storage and water heater room."  Pl.'s Resp., Ex. 5.  State Farm made additional payments to Quinn for water damage in early 2004.  State Farm's letters relating to the water damage reference the claim number 53-Q560-279, which State Farm had assigned to Quinn's claim for plumbing leaks and foundation damage in June 2002.

Quinn filed this suit in state court on December 9, 2005, seeking damages for State Farm's refusal to pay for the damage to her home's foundation.  Quinn's state court petition makes claims for violation of the Texas Deceptive Trade Practices Act ("DTPA"), violation of Texas Insurance Code Articles 21.21 and 21.55, breach of fiduciary duty, breach of contract, breach of the duty of good faith and fair dealing, fraudulent and/or negligent misrepresentation, and fraudulent and/or negligent claim handling.  State Farm removed the case to this Court on January 17, 2006, and has now filed a motion to dismiss Quinn's claims and for summary judgment.  State Farm asserts that three of Quinn's claims – those for breach of fiduciary duty, fraudulent claim handling, and negligent claim handing – are not recognized causes of action under Texas law, and should therefore be dismissed.  State Farm contends that Quinn's remaining claims are time-barred.  On the contrary, Quinn contends that her claims did not accrue until after her ongoing discussions with State Farm, and accordingly, that they are not barred by limitations.  Having considered the parties briefs, and the parties' having appeared for a hearing on the motion, the Court finds that State Farm's motion should be granted.

## II. MOTION TO DISMISS

### A. Failure to State a Claim

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  A district court will dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) only if "it appears certain that the plaintiff cannot prove any set of facts

in support of his claim that would entitle him to relief." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994).  When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

**B. Analysis**

State Farm is correct that Quinn's claims for breach of fiduciary duty, fraudulent claim handling, and negligent claim handling are not recognized by Texas courts.  Because there is no general fiduciary duty between an insurer and its insured under Texas law, in order to state a claim for breach of fiduciary duty, an insured must allege that an informal, confidential relationship existed apart from the insurance contract.  *See, e.g.*, *E.R. Dupuis Concrete Co. v. Penn. Mut. Life Ins. Co.*, 137 S.W.3d 311, 318 (Tex. App.—Beaumont 2004, no pet.) ("[t]here is no general fiduciary duty between an insurer and its insured . . . the requisite special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit.") (quotation omitted).  Here, Quinn has not made any allegation of a relationship between her and State Farm, aside from that arising from her homeowner's policy.  Similarly, negligence or fraud with regard to the performance of contractual duties, such as claim handing, does not give rise to a separate cause of action under Texas law.  *See, e.g.*, *Northwinds Abatement, Inc. v. Employers Ins. Of Wausau*, 258 F.3d 345, 352 (5th Cir. 2001) (recognizing the absence of a cause of action for fraudulent or negligent claim handling under Texas law).

In her response to State Farm's motion, Quinn indicates that she will withdraw her claims for breach of fiduciary duty, fraudulent claim handling, and negligent claim handling, and file an amended petition deleting these claims.  Because Quinn has not yet filed an amended petition, and for the sake of precision, these claims are hereby **DISMISSED**.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material facts exists if a reasonable jury could enter a verdict for the nonmoving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Id.*

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and "mandates the entry of summary judgment" for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party shows that there is a lack of evidence to support the nonmoving party's claims, the nonmoving party "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Kee*, 247 F.3d at 210 (quotation omitted). The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

### B. Accrual of Claims

A cause of action accrues, and the statute of limitations begins to run, when a wrongful act causes damage to a plaintiff, such that the plaintiff could seek a judicial remedy. *Murray v.*

*San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990).  The Texas Supreme Court has held that a cause of action arising from the denial of an insurance claim accrues on the date of the denial.  *Id.* at 828 (holding that a claim for breach of the duty of good faith and fair dealing accrues on the day that an insurance company denies coverage); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) (noting that extra-contractual claims, including claims under the Texas Insurance Code and the Texas DTPA, accrue upon the denial of the insured's claim).  "The fact that damage may continue to occur for an extended period after denial does not prevent limitations from starting to run."  *Murray*, 800 S.W.2d at 828.

In *Pace v. Travelers Lloyds of Texas Ins. Co.*, the court held that a letter sent from an insurance company to its insured, informing the insured that his claim was not covered under his insurance policy and would not be paid, constituted a denial of his insurance claim.  162 S.W.3d 632, 634-35 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  Although the insurer's letter invited the insured to provide any additional information that he felt might affect this decision, the court found that the letter did not create any doubt that the insurer had made a coverage decision as of the date of the letter.  *Id.*  Additionally, the fact that the insured then hired his own engineer and submitted the engineer's report to the insurer, which reviewed the report and indicated that its position had not changed, did not create any uncertainty about the decision conveyed in the insurer's earlier letter, nor did it restart or extend the limitations period.  *Id.*

Like the letter considered by the court in *Pace*, State Farm's letter to Quinn, dated September 17, 2002, stated that:

> As indicated above, our investigation revealed the plumbing leak(s) located at your residence did not cause the damage claimed.  Therefore, the exclusions cited above apply and coverage cannot be extended for your loss.  Accordingly, we will not be issuing payment for the damages falling within these exclusions.

Def.'s Mot. for Summ. J., Ex. B.  While this letter and subsequent letters encouraged Quinn to contact State Farm with any questions or additional information, the language cited above left no uncertainty regarding State Farm's decision to deny Quinn's claim.  Similarly, State Farm's subsequent consideration of engineering reports from David Grissom, Fugro South, Inc., and a third-party engineer, relating to the foundation damage to Quinn's home, did not create any doubt as to State Farm's decision to deny Quinn's claim, nor did it indicate a withdrawal of this decision.  Rather, in each subsequent communication with Quinn regarding the foundation damage, State Farm noted that its "decision regarding [her] claim remain[ed] unchanged as outlined in [State Farm's] letter dated September 17, 2002."  Def.'s Mot. for Summ. J., Exs. D, E, F, G, H; *see also* Def.'s Mot. for Summ. J., Ex. C ("State Farm's claim decision of September 17, 2002, remains unchanged.").  Like the correspondence between the insurer and insured in *Pace*, State Farm's letters to Quinn unambiguously stated that State Farm had made a decision regarding Quinn's claim for foundation damage, and that this decision was to deny any payment on the claim.

Quinn asserts in response that, subsequent to the correspondence discussed above, State Farm continued to inspect her home and revised its repair estimate for water damage resulting from a shower pan leak.  State Farm's letters to Quinn indicate that State Farm made these additional payments for water damage as late as March or April 2004.  As Quinn correctly notes, these letters reference the same claim number, 53-Q560-279, which was referenced in State Farm's letters regarding the damage to her home's foundation.  Quinn argues that this subsequent correspondence shows that this case involves a single and continuing claim, which was still being discussed and paid in 2004, well after State Farm's letter dated September 17, 2002.  As Quinn asserts, where an insurance company investigates an insured's claims for

7

additional payments relating to a single, continuing problem, this may begin anew the running of the statute of limitations. *Pena v. State Farm Lloyds*, 980 S.W.2d 949, 954 (Tex. App.—Corpus Christi 1998, no pet.).

In *Pena*, the court based its holding on the fact that, despite the assignment of different claim numbers, the insured's additional claims related to one, continuing problem of slab foundation movement, which was the subject of the insured's lawsuit. *Id.* There, the insurer's additional investigation of the slab foundation movement demonstrated a reconsideration and withdrawal of its earlier decision regarding the slab foundation problem. *Id.* In contrast, State Farm's additional investigation and payment to Quinn in 2004 did not concern her claim for foundation damage, which is the subject of this lawsuit, but rather, her claim for plumbing leaks. Quinn's foundation damage problem and her plumbing leaks problem were consistently subject to separate investigations and treatment by State Farm, which concluded that the two problems bore no relationship to one another. Although State Farm assigned a single claim number to Quinn's claims when she reported damage to her home in 2002, the plumbing leaks and the foundation damage constituted two, separate problems. State Farm's additional investigation and payment for Quinn's plumbing leaks therefore has no bearing on the accrual of her claim regarding the foundation damage.

State Farm's letter to Quinn dated September 17, 2002, in which State Farm informed Quinn that it would not make any payment on her claim for foundation damage, constituted a denial of Quinn's foundation damage claim. While State Farm continued to investigate and make payments on Quinn's other claims, it never modified or withdrew its denial of her foundation damage claim. Accordingly, Quinn's claims regarding State Farm's refusal to pay for the foundation damage accrued on the date of State Farm's denial, on September 17, 2002.

**C. Statute of Limitations and Timeliness of Claims**

Quinn's homeowner's policy with State Farm states that, "[a]ctions brought against [State Farm] must be started within two years and one day after the cause of action accrues."  Def.'s Mot. for Summ. J., Ex. A, Policy at 7.  In her response to State Farm's motion, and at a hearing before the Court on May 12, 2006, Quinn agreed that the statute of limitations applicable to all of her claims in this lawsuit is two years.

As discussed above, Quinn's claims against State Farm for denying payment for the foundation damage to her home accrued on September 17, 2002.  Quinn filed this lawsuit, seeking damages for State Farm's refusal to pay for the foundation damage, on December 9, 2005, over three years after her claims accrued.  Because the applicable statute of limitations is two years, Quinn's claims are untimely and barred by limitations.

**IV. CONCLUSION**

State Farm's motion to dismiss and for summary judgment is **GRANTED**, and the case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED** this 25th day of May, 2006.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT